IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JAMES BRODOWY and MARGARET BRODOWY, | CV 22-30-H-KLD |
| Plaintiffs, | |
| vs. | ORDER |
| PROGRESSIVE DIRECT INSURANCE COMPANY, d/b/a PROGRESSIVE DIRECT AUTO, and JOHN DOES I-V, | |
| Defendants. | |

This third-party insurance bad faith action comes before the Court on the parties' cross motions for summary judgment. For the reasons discussed below, Plaintiffs James and Margaret Brodowy's (collectively "the Brodowys") motion for partial summary judgment on liability (Doc. 27) is denied, and Defendant Progressive Direct Insurance Company, d/b/a Progressive Direct Auto's ("Progressive") cross-motion for summary judgment on all claims alleged in the Complaint is granted (Doc. 31).

## I.   <u>Background</u>[1]

On the morning of September 24, 2019, James Brodowy ("James") was driving his motorcycle to work in Helena, Montana when he was struck by a vehicle driven by KayDe Burkstrand. (Doc. 37 at ¶ 1). Shortly after the accident, James was life-flighted to the University of Utah Hospital in Salt Lake City. (Doc. 39 at ¶ 4). James's wife, Margaret Brodowy ("Margaret"), was not on the motorcycle or at the scene of the accident, but was able to travel with James to the hospital in Salt Lake City. (Doc. 37 at ¶ 2; 39 at ¶ 5). The Brodowys did not return from Salt Lake City until December 10, 2019. (Doc. 39 at ¶ 18). As a result of the collision, James suffered a severe spinal cord injury that has left him paralyzed from the chest down. (Doc. 39 ¶ 3). It is undisputed that Burkstrand was at fault for the accident. (Doc. 37 at ¶ 1).

At the time of the accident, Burkstrand was insured under a Progressive automobile liability insurance policy ("Policy") with bodily injury liability limits of $25,000 per person and $50,000 per accident. (Doc. 11 at ¶ 8; Doc. 37 at ¶¶ 3-4; Doc. 39 at ¶ 7). On the evening of September 24, 2019, Margaret called Progressive and reported the accident. (Doc. 30-2 at 2). Notes by the Progressive

---

[1] The following facts are taken from the parties' joint statement of stipulated facts (Doc. 11) and the undisputed facts established in the parties' statements of undisputed and disputed facts (Docs. 29, 33, 37, 39). D. Mont. L.R. 56.1(b–d).

claims processor who took Margaret's call identify the "claimant party" and the injured "claimant driver" as "Jim Brodowy." (Doc. 30-2 at 2). As a result of Margaret's call, Progressive opened a claim and assigned the matter to claims representative Maureen Snyder ("Snyder"). (Doc. 30-2 at 2, 4).

Two days after the accident, on September 26, 2019, Snyder received a call from a representative of the University of Utah Hospital who reported that Margaret was wondering if there was any way for the hospital to bill Progressive directly. (Doc. 30-2 at 4). Snyder provided the billing address for claims and advised the caller that a liability determination was pending. (Doc. 30-2 at 4). Later that day, Snyder attempted to call Margaret and left a voicemail stating that her investigation was pending, the police report had been ordered, and that she welcomed a call back for any questions or concerns and would keep Margaret updated as she obtained more information. (Doc. 30-2 at 5; Doc. 39 at ¶ 10). Snyder's claim notes reflect that on October 1, 2019, Margaret left her a voicemail stating that James remained in the intensive care unit and that Margaret could be difficult to reach. (Doc. 39 at ¶¶ 11-12; Doc. 30-2 at 5).

Two weeks later, on October 15, 2019, Snyder indicated that medical records received directly from the providers warranted a "pl[aintiff] tender," and also interviewed Burkstrand by telephone. (Doc. 39 at ¶ 13; Doc. 30-2 at 5-6). After the interview, Snyder noted that Progressive's insured was the proximate

3

cause of the loss, and that she needed to complete the coverage and liability evaluation. (Doc. 39 at ¶ 13; Doc. 30-2 at 5-6). On October 22, 2019, Snyder reviewed the accident report and wrote in her claim notes: "liability complete" and "Liability Range: 100% adverse to ins[ured]." (Doc. 39 at ¶ 14; Doc. 30-2 at 6-7). That same day, Snyder sent a letter addressed to James at his home address in Helena. (Doc. 30-3). The letter stated in relevant part: "The policy limits under the Progressive policy for Kayde Burkstrand is $25,000 per person for Bodily Injury. Please find the enclosed policy Declarations Page for your reference. Progressive is now prepared to tender the full policy limit to you for the full and final settlement of your claim." (Doc. 39 at ¶ 15; Doc. 30-3 at 2).

Snyder sent the Brodowys a follow up email on December 16, 2019. (Doc. 39 at ¶ 16; Doc. 30-2 at 12). Snyder reiterated that Burkstrand's Progressive policy "carries a $25,000 per person limit for bodily injury and this policy limit was offered to you in October 22nd correspondence." (Doc. 39 at ¶ 16; Doc. 30-2 at 12). Snyder stated she was "aware that the medical expenses far exceed this policy limit," and advised the Brodowys that if they had any applicable underinsured motorist bodily injury coverage she would be happy to coordinate with their "insurance carrier for any necessary documentation they may need to process their claim for you." (Doc. 39 at ¶ 16; Doc. 30-2 at 12). Snyder explained that she had not received "any medical claim liens or subrogation interests that must be

protected upon settlement, so upon acceptance/confirmation from you, I can issue

the $25,000 payment to you and have it mailed straight away." (Doc. 39 at ¶ 16;

Doc. 30-2 at 12).

On December 21, 2019, the Brodowys responded to Snyder by email stating

that they "would like to accept the $25,000" and asking Progressive to send the

check to their Helena address. (Doc 39 at ¶ 23; Doc. 30-2 at 13). On January 2,

2020, Progressive mailed a letter addressed to James and enclosed a check for

$25,000 made out to both James and Margaret. (Doc. 39 at ¶¶ 24-25; Doc. 30-1 at

2; Doc. 33-6). The letter stated:

> We have reached an agreement for the complete and full settlement of your
> Bodily Injury claim only. Payment in the amount of $25,000 is enclosed.
> This concludes the handling of your claim. No further payments can be
> made by Progressive for any loss-related medical expenses or injury
> compensation.
>
> Enclosed is also an Injury Release form, sent on behalf of our insured, for
> your signature and return. Please be advised that the settlement is not
> contingent on you signing the release, and the payment can be processed
> without the release being executed.

(Doc. 30-1 at 2). The enclosed release listed both James and Margaret, and would

have discharged Burkstrand from "any and all claims…." resulting from the

accident in consideration for Progressive's $25,000 payment. (Doc. 30-6).

Progressive's next communication with the Brodowys came by way of a

January 30, 2020, letter from their attorney. (Doc. 37 at ¶ 19; Doc. 33-7). The letter

returned Progressive's $25,000 check and asked Progressive to confirm coverages.

(Doc. 37 at ¶ 19; Doc. 33-7). On February 7, 2020, Progressive responded with a copy of the Policy's declarations page, a certified copy of the Policy, and a confirmation that it was unaware of any other applicable coverage. (Doc. 37 at ¶ 20; Doc. 33-8). During an email exchange on April 3, 2020, the Brodowys' attorney advised Snyder that he would be sending a settlement demand in the near future. (Doc. 33-2 at 17). Snyder followed up with another email on June 16, 2020, asking counsel for an update on the timeframe of the Brodowys' anticipated settlement demand. (Doc. 37 at ¶ 21; Doc. 33-2 at 18).

On July 20, 2020, counsel sent Progressive a demand letter on behalf of both James and Margaret. (Doc. 33-9). The letter demanded $50,000 to resolve their respective claims against Burkstrand, in exchange for a full release of Burkstrand. (Doc. 33-9; Doc. 37 at ¶ 23). Progressive received the demand letter on July 27, 2020, and seven days later it tendered payment of policy limits in the amount of $50,000. (Doc. 33-2 at 20-24; Doc. 39 at ¶ 28; Doc. 37 at ¶ 26).

The Brodowys filed this action in state court on September 29, 2021, and Progressive timely removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446. (Doc. 1, Doc. 1-1). The Complaint asserts claims for violations of Montana's Unfair Trade Practices Act ("UTPA"), Mont. Code Ann. §§ 33-18-101 et seq. (Count 1), common law bad

faith (Count 2), breach of the covenant of good faith and fair dealing (Count 3), and punitive damages (Count 4). (Doc. 10).

The Brodowys move for partial summary judgment on liability under the UTPA, reserving issues of causation and damages for trial. (Doc. 27). Progressive argues the undisputed evidence demonstrates that it did not act in bad faith, and cross-moves for summary judgment on all claims. (Doc. 31).

## II.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A moving party who does not have the ultimate burden of persuasion at trial may carry its initial burden of production in one of two ways: "the moving party may produce evidence negating an essential element of the nonmoving party's

case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d 1099, 1006 (9th Cir. 2000).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the

benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

**III.   Discussion**

    **A.   Statutory Bad Faith (Count 1)**

The Brodowys advance two theories in support of Count 1, which alleges that Progressive's conduct violated the UTPA. First, they assert that Progressive violated Mont. Code Ann. § 33-18-201(1), (4), (6), or (13) of the UTPA by failing to address its obligation to advance pay medical expenses under *Ridley v. Guaranty Nat'l Ins. Co.*, 951 P.2d 987 (Mont. 1997). Second, they claim Progressive violated the same UTPA provisions by sending James an optional release when liability was reasonably clear and the undisputed damages exceeded the applicable policy limits, and by including Margaret on the optional release and $25,000 check. (Doc. 27).

Progressive counters that it is entitled to judgment as a matter of law on both theories on the grounds that: (1) it was not required to make advance payments because the Brodowys did not demand or request that it do so, as required to trigger its obligations under *Ridley*; (2) the optional release and policy payment did not violate the UTPA; and (3) it had a reasonable basis in law and fact for not making advance payments absent a *Ridley* demand, and for providing the Brodowys with an optional release.

1.    _Ridley_ Demand

The Brodowys ask the Court to rule as a matter of law that Progressive violated subsections (1), (4), (6) or (13) of the UTPA by failing to advance pay James's medical expenses and otherwise address its claims handling obligations under _Ridley_.

Subsection (6) of § 33-18-201 prohibits an insurer from neglecting "to attempt in good faith to effectuate prompt, fair, and equitable settlements of claim in which liability has become reasonably clear." Mont. Code Ann. § 33-18-201(6). Subsection (13) provides that an insure may not "fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." Mont. Code Ann. § 33-18-201(6). In _Ridley_, the Montana Supreme Court held that subsections (6) and (13) together require an insurer to pay an injured third party's medical expenses prior to settlement when liability for the accident is reasonably clear, and it is reasonably clear that those medical expenses are causally related to the accident. _Ridley_, 951 P.2d at 992.

This Court has previously held that the duties imposed on a liability insurer under § 33-18-201 of the UTPA, including subsections (6) and (13), are triggered when a claim is made. _Moe v. Geico Indemnity Co._, 2021 WL 4244986, at *6 (D. Mont. Sept. 15, 2021), _findings and recommendation adopted,_ 2022 WL 225518

10

(D. Mont. Jan. 26, 2022), *vacated and remanded on other grounds,* 73 F.4th 757
(9th Cir. 2023). See also *Coleman Construction, Inc. v. Diamond States Ins. Co.*,
2008 WL 2357365, at *3 (D. Mont. June 5, 2008). If no claim is submitted to the
insurer, the UTPA does not apply. *Moe*, 2021 WL 4244986, at *6 (citing *Coleman*,
2008 WL 2357365, at *3). This means that in order to trigger an insurer's
obligation to advance pay medical expenses under the UTPA, a third-party
claimant must have made a bodily injury claim under the insured's policy, and
must also make a claim, or demand, for *Ridley* damages. *Moe*, 2021 WL 4244986,
at **6-9.

This Court concluded in *Moe* that to make what amounts to a claim for
*Ridley* damages, an injured third-party "must communicate a request or demand for
advance payments to the insurer." *Moe*, 2021 WL 4244986, at *9. A *Ridley*
demand need not be denominated as such, however, to trigger an insurer's
statutory obligation to advance payment for a third-party claimant's medical
expenses. *Moe v. Geico Indemnity, Inc.*, 2019 WL 5682511, at * 3 (D. Mont. July
25, 2019) (citing *Sell v. American Family Mut. Ins. Co.*, 2011 WL 1042688, at *5
(D. Mont. Jan. 31, 2011)), *findings and recommendation adopted*, 2020 WL
6214882 (D. Mont. Jan. 6, 2020).

Once an injured third-party makes a demand for *Ridley* damages, the insurer
has a duty to make advance-pay the injured party's medical expenses if (1) liability

11

is reasonably clear and (2) it is reasonably clear that the medical expenses are causally related to the accident. *Teeter v. Mid-Century Ins. Co.*, 406 P.3d 464, 468 (Mont. 2017). See also *Moe*, 2021 WL 4244986, at *7.

Applying these standards here, the Brodowys argue Progressive had an obligation to advance pay medical expenses related to the accident as of October 22, 2019. (Doc. 28 at 8). It is undisputed that James made a bodily injury claim under the Policy, as required for the UTPA to apply in the first instance. Additionally, there can be no dispute that James incurred medical expenses that were causally related to the accident, and that the liability of Progressive's insured was reasonably clear as of October 22, 2019 – the date Synder wrote in her claim notes: "liability complete" and "Liability Range: 100% adverse to ins[ured]." (Doc. 30-2 at 6-7). Rather, the argument here centers on whether the Brodowys ever made what amounts to a *Ridley* demand, as required to trigger Progressive's obligation to advance payment for James's medical expenses.

The Brodowys take the position that that Progressive's *Ridley* obligations were triggered when it learned that Margaret had contacted the University of Utah Hospital to ask whether it could bill Progressive directly for James's medical expenses. On September 26, 2019, a representative of the hospital contacted Progressive and reported that Margaret was "wondering" if there was "any way" for the hospital to bill Progressive directly. (Doc. 30-2 at 4). Snyder provided the

caller with the billing address for claims (Doc. 39 at ¶ 9), and her claim notes reflect that by the time she made her liability determination on October 22, 2019, she had received unspecified medical records directly from James's providers. (Doc. 39 at ¶ 12).

The Brodowys maintain that Margaret's inquiry as to whether the hospital could bill Progressive directly, which was relayed to Progressive by a representative of the hospital, amounted to a *Ridley* demand and was sufficient to trigger Progressive's obligations under the UTPA. Progressive counters, and the Court agrees, that this argument is foreclosed by the reasoning in *Moe.* The fact that Progressive learned from the treating hospital that Margaret was "wondering" if the hospital could submit accident-related medical bills directly to Progressive is not sufficient to constitute a demand or request that Progressive pay those bills in advance of settlement. There is simply no evidence that the Brodowys ever contacted Progressive to request or demand that it pay James's medical bills as they were incurred.

As recognized in *Moe*, "requiring an insurer to make advance payments even when there has been no demand or request that it do so would often run counter to the best interests of the third-party claimant." Moe, 2021 WL 4244986, at *9. Under Montana law, a claimant may "first use health insurance to pay medical expenses and then often recover the same medical expenses from a tortfeasor's

insurer, thereby 'double-dipping' by having the same medical bill paid twice and benefitting from the health insurer's preferred provider agreement." Moe, 2021 WL 4244986, at *8. Here, Progressive points to evidence that medical insurance covered James's medical bills and the Brodowys' attorney was able to negotiate the resulting lien, thereby reserving funds from the Policy proceeds for the Brodowys. (Doc. 39-2, at 8, 11, 12-13; Doc. 39-4). As Progressive suggests, requiring it to make advance payments without a demand by the Brodowys that it do so would have been directly counter to the Brodowy's best interests.

As in *Moe*, the primary case the Brodowys rely on to support their argument that *Ridley* was triggered -- *Sell v. American Family Mut. Ins. Co.*, 2011 WL 104288, at *5 (D. Mont. Jan. 31, 2011) (findings and recommendation) -- is distinguishable. In *Sell*, the third-party claimant's medical bills "had been submitted" to the insurer for payment. *Sell*, 2011 WL 1042688, at *5. The insurer argued it was not obligated to make advance payments because there had been no *Ridley* claim, and the demand for payment came from the claimant's medical provider. *Sell*, 2011 WL 1042688, at *5; *Sell v. American Family Mut. Ins. Co.*, 2011 WL 1044563, at *1 (D. Mont. March 18, 2011) (order adopting findings and recommendation). The court disagreed, noting it was clear based on the record that the insurer considered the submitted medical bills as a request for advance payment because the insurer sent the bills to the claimant's attorney with letters

14

explaining that it would not advance pay the claimant's medical bills before a

settlement was reached. *Sell*, 2011 WL 1042688, at *5. The court concluded the

insurer was aware that the third-party claimant was requesting advance payment of

her medical expenses, and held that her failure to make a formal *Ridley* demand

was not fatal to her claim under the UTPA. *Sell*, 2011 WL 1042688, at *5.

Unlike *Sell*, in which it was clear the insurer understood the claimant was

asking it to advance pay her medical bills but refused to do so, the undisputed

evidence demonstrates the same was not true here. Although Margaret inquired of

the hospital whether it could submit James's medical bills directly to Progressive,

and Margaret's inquiry was relayed to Progressive, there is no evidence that she or

James communicated a demand or request for advance payment of those bills to

Progressive. Also unlike *Sell*, Progressive never advised the Brodowys that it

would not pay James's medical bills. See *Moe*, 2021 WL 4244986, at *5-6

(distinguishing *Sell* on similar grounds).

Because the Brodowys did not demand or request that Progressive pay

James's medical bills as they were incurred, they did not make a *Ridley* demand as

required to trigger Progressive's advance pay obligations under subsections (6) and

(13) of § 33-18-201. To the extent the Brodowys assert that Progressive also

violated subsections (1) and (4) by not addressing its *Ridley* obligations, their

failure to make a *Ridley* demand is likewise fatal to their claims.

Subsection (1) of § 33-18-201 provides that an insurer may not
"misrepresent pertinent facts or insurance policy provisions relating to coverages at
issue." "A misrepresentation claim under this subsection requires plaintiffs to
allege a misrepresentation specifically relating to the coverage an insurance policy
offers." *Bentle v. Farmers Ins. Exch.*, 2022 WL 17787286, at *4 (D. Mont. Dec.
19, 2022) (citing *Lorang v. Fortis Ins. Co.*, 192 P.2d 186, 213 Mont. 2008)).

The Brodowys argue Progressive misrepresented the coverage available
under the Policy by failing to advise them of its *Ridley* obligations and instead
offering the bodily injury policy limit as a full and final settlement of James's
bodily injury claim. (Doc. 28 at 10). But because the Brodowys did not make a
*Ridley* demand as required to trigger Progressive's obligation to make advance
payments, this claim fails as a matter of law.

The Brodowys further assert that Progressive violated § 33-18-201(4), which
prohibits an insurer from refusing "to pay claims without conducting a reasonable
investigation based upon all available information." The Brodowys contend that
Progressive violated subsection (4) because it failed to respond to Margaret's
inquiry as to whether the hospital could bill Progressive directly or to otherwise
investigate or consider its *Ridley* obligations. (Doc. 28 at 10-11). But again, the
undisputed evidence demonstrates that the Brodowys never demanded advance
payment of James's medical bills, and there is no evidence that Progressive refused

to pay *Ridley* damages.  Accordingly, Progressive cannot be held liable under subsection (4) for refusing to pay *Ridley* damages without conducting a reasonable investigation.

2.   <u>Release and Policy Payment</u>

The Brodowys also advance the theory that Progressive violated Mont. Code Ann. § 33-18-201 by sending a proposed release form when tendering the $25,000 bodily injury policy limit on James's bodily injury claim, and by including Margaret on the proposed release and $25,000 check. Progressive counters that the release it provided was "optional," and did not violate the UTPA by impermissibly conditioning the policy limit payment on a release of its insured. Progressive also contends it permissibly included Margaret's name on the proposed release and check.

As discussed above, *Ridley* held that under subsections (6) and (13) of § 33-18-201, an insurer has an obligation to pay an injured third party's medical expenses prior to settlement when the liability of its insured is reasonably clear and it is reasonably clear that the expenses are causally related to the accident.  *Ridley*, 951 P.2d at 992. The Montana Supreme Court later expanded the requirements of *Ridley,* holding that it is a violation of § 33-18-201 for an insurer to condition payment of policy limits to an injured third party on a full and final release of all claims against the insured, when it is reasonably clear that the third party's

17

damages exceed policy limits. *Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721, 726 (Mont. 2003); *Watters v. Guaranty Nat. Ins. Co.*, 3 P.3d 626, 638 (Mont. 2000) (overruled in part on other grounds by *Shilhanek*, 70 P.3d at 725).

More recently, the Montana Supreme Court outlined this principle as follows: "When it is reasonably clear that the amount required for a final settlement of all claims – including general damages reasonably shown to have been caused by the insured's conduct – exceeds policy limits, an insurer has a duty to pay policy limits to an injured third party, without conditioning such a payment on obtaining a release for its insured." *High Country Paving, Inc. v. United Fire & Casualty Co.,* 454 P.3d 1210, 1215 (Mont. 2019). *High Country* reasoned that the only reason for an insurer to demand a release for its insured when liability is reasonably clear and it is reasonably clear that damages exceed policy limits "would be to leverage the injured third party into settling for less than the amount of his or her damages to avoid the time and expense of trial. Such behavior is improper and would constitute a violation of the UTPA." *High Country*, 454 P.3d at 1215.

Here, there is no dispute that the liability of Progressive's insured was reasonably clear, and that damages related to the accident exceeded Policy limits. The Brodowys contend there is nothing in *Shilhanek* to suggest that providing an optional release of the insured in this situation is an acceptable alternative to

conditioning payment on a full and final release of all claims against the insured. The Brodowys take position that "the mere inclusion of a release, whether it was optional or not, only bolstered the misrepresentation that this was a full and final settlement without ever addressing the *Ridley* obligation with the Brodowys[.]" (Doc. 28 at 15).

While the Brodowys are correct that *Shilhanek* did not address the propriety of providing an optional release, Progressive persuasively points out that if the Court were to accept the Brodowys' argument, an insurer would effectively be prohibited from even asking for a release of its insured. (Doc. 38 at 19). The rule derived from the *Shilhanek* line of cases is clear: Where an insured's liability for damages caused to a third party reasonably clear, and it is reasonably clear that those damages exceed policy limits, it is an unfair trade practice for the insurer to condition payment of the policy limits on a full and final release of all claims against the insured. *Shilhanek*, 70 P.3d at 726 (citing *Watters*, 3 P.3d at 638); *High Country*, 454 P.3d at 1215. As recognized by the federal district court in the *High Country* litigation, "this does not mean that *any* obligation to seek a release of liability for an insured defies public policy[.]" *High Country Paving, Inv. v. United Fire & Casualty Co.*, 365 F.Supp.3d 1093, 1100 (D. Mont. 2019).

The undisputed evidence here demonstrates that Progressive did not condition payment of the $25,000 per person bodily injury policy limit on a release

of its insured. The January 2, 2020 letter Progressive enclosed with the proposed

release form and check advised as follows: "Enclosed is also an Injury Release

form, sent on behalf of our insured, for your signature and return. Please be

advised that the settlement is not contingent on you signing the release, and the

payment can be processed without the release being executed." (Doc. 30-1). At her

deposition, Margaret testified that she understood upon reading the letter that they

were not required to sign the release for payment to proceed. (Doc. 33-1 at 6

[122:12-123:10]). Because Progressive did not condition payment on a release of

its insured, this aspect of the Brodowys' UTPA claim fails as a matter of law.

The Brodowys additionally contend Progressive violated the § 33-18-201 by

including Margaret on the optional release and $25,000 check. They argue this

constituted a misrepresentation of the available limits under the Policy in violation

of subsection (1) because, had Margaret signed the release, she would have

unknowingly waived any independent claims she may have had under the Policy.

The Brodowys maintain that Progressive's decision to include Margaret on the

optional release and check also violated subsections (6) and (13) because

Progressive was attempting to leverage Margaret's individual claims through the

full and final settlement of James's bodily injury claim.

The Court does not find these arguments persuasive. Under Montana law,

derivative claims, such as a claim for loss of consortium by the deprived spouse,

do not trigger a separate "per person" policy limit. See *Bain v. Gleason*, 726 P.2d 1153, 1157 (Mont. 1986) (holding "the cause of action for loss of consortium by the deprived spouse and the cause of action for bodily injuries by the injured spouse are subject together to the 'one person limitation'"). Progressive's decision to include Margaret on the optional release and check effectively acknowledged that she could have derivative claims, which would have been included in James's $25,000 per person limit. At the time Progressive provided the optional release in January 2020, Margaret had not asserted any claim under the Policy, derivative or otherwise. Approximately six months later, in a demand letter dated July 20, 2020, counsel for the Brodowys submitted a claim on Margaret's behalf under the Policy. (Doc. 33-9). It is undisputed that Progressive paid the Brodowys' claims seven days after it received the demand letter, tendering payment of policy limits in the total of $50,000. (Doc. 33-9; Doc. 37 at ¶ 26).

On these facts, the Court finds the Brodowys have not shown that Progressive misrepresented the available limits under the Policy, or that it leveraged Margaret's individual claims through the full and final settlement of James's bodily injury claim. Accordingly, this aspect of the Brodowys' UTPA claim also fails as a matter of law.

3.    <u>Reasonable Basis in Law and Fact</u>

21

Progressive argues the Brodowys' UTPA claims fail as a matter law for the additional reason that it had a reasonable basis in law for not issuing payment under the Policy until the Brodowys requested it do so, and for providing the Brodowys with an optional release of its insured. The Brodowys counter that Progressive's "reasonable basis" argument is both procedurally improper and substantively incorrect.

Procedurally, they call attention to the fact that Progressive has not made this argument in support of its own motion for summary judgment motion, but rather raises it only in opposition to the Brodowys' summary judgment motion. The Brodowys contend that Progressive is essentially "attempting to backdoor this issue into these cross-motions for summary judgment," and they have not had a full and fair opportunity to respond. (Doc. 41 at 12-13).

 Although Progressive has not cross-moved for summary judgment on its "reasonable basis" affirmative defense, no such motion is required if the moving party has "had a full and fair opportunity to consider the proposition and all other criteria for summary judgment are met." *West for Lee v. United Services Automobile Assoc.*, 384 P.3d 58, 64 (Mont. 2016). The Brodowys contend that due to the word limit applicable to reply briefs, they have not had a full and fair opportunity to respond. However, the Brodowys have had ample opportunity to argue the law applicable to their UTPA claims in the summary judgment briefing

thus far, and they do not explain what other arguments they would need additional briefing to address. The Brodowys further argue that Progressive's failure to file a statement of undisputed facts specifically addressing its reasonable basis defense is deemed an admission that there are factual disputes precluding summary judgment pursuant to Local Rule 56.1. But the undisputed facts taken from the statement of undisputed facts Progressive filed in support of its pending motion for summary judgment are equally applicable to its reasonable basis defense, and establish that the criteria for summary judgment are met.

As in *West for Lee,* the Court finds the Brodowys' procedural argument unpersuasive because the record reflects that they have had a full and fair opportunity to argue the law applicable to their UTPA claims, there are no material facts in dispute, and Progressive is entitled to judgment as a matter of law on its reasonable basis defense for the reasons that follow. *West for Lee*, 384 P.3d at 65 (finding no cross motion for summary judgment on the insurer's reasonable basis defense was necessary because the plaintiff had a full and fair opportunity to argue the law applicable to her bad faith claim, there were no genuine issues of material of fact, and the insurer was entitled to judgment as a matter of law).

Substantively, the Brodowys challenge Progressive's position that it had a reasonable basis in law or fact for not issuing payment until they actually requested it do so. An insurer may not be held liable under the UTPA if it "had a reasonable

basis in law or fact for contesting the claim or the amount of the claim, whichever is in issue." Mont. Code Ann. §§ 33-18-242(5). The Montana Supreme Court has "generally held that an insurer is entitled to challenge a claim on the basis of debatable law or facts and will not be held liable" for bad faith "if its position is not wholly unreasonable." *State Farm Mutual Auto Ins. Co. v. Freyer*, 312 P.3d 403, 418 (Mont. 2013) (quoting *Safeco Inc. Co. v. Ellinghouse*, 725 P.2d 217, 223 (Mont. 1986)).

"Reasonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Freyer*, 312 P.3d at 419 (quoting *Redies v. Attorneys Liab. Protec. Soc.*, 150 P.3d 930, 938 (Mont. 2007)). In determining whether an insured had "a reasonable basis in law for contesting coverage, 'it is first necessary to survey the legal landscape as it existed during the relevant time period.'" *West for Lee*, 384 P.3d at 61 (Mont. 2016) (quoting *Freyer*, 312 P.3d at 418). Absent "caselaw on point, 'the determinative question' is whether the law in effect at the time, caselaw or statutory, provided sufficient guidance to signal to a reasonable insurer that its grounds for denying the claim were not meritorious." *Freyer*, 312 P.3d at 419 (quoting *Redies*, 150 P.3d at 940).

Here, Progressive argues, and the Court agrees, that given the current legal landscape in Montana, it had a reasonable basis in law for not making advance

payment of medical expenses absent a demand or request it do so. As explained in *Moe*, "[a]lthough the Montana Supreme Court has not directly addressed this issue, review of the relevant caselaw reflects that a third-party claimant must demand or request advance payment of medical expenses or lost wages in order to trigger an insurer's advance pay obligations under the UTPA." *Moe*, 2021 WL 4244986, at *10. Because the undisputed evidence demonstrates that the Brodowys did not make a *Ridley* demand, Progressive had a reasonable basis in law and fact for not making advance payment of James's medical expenses or otherwise addressing its *Ridley* obligations.

Progressive additionally argues it had a reasonable basis in law and fact for asking the Brodowys for a release of its insured. As discussed above, the undisputed evidence demonstrates that Progressive did not condition payment of the policy limits on a release of its insured as prohibited under Montana law. It follows, then, that Progressive had a reasonable basis in law and fact for providing the Brodowys with an optional release of its insured.

## B.   Common Law Bad Faith (Count 2)

Count 2 of the Complaint asserts a common law bad faith claim based on the same facts. (Doc. 10 at ¶¶ 23-28). Progressive maintains that the Brodowys have not identified any applicable common law duty outside of the obligations imposed

under the UTPA, and takes the position that this claim thus fails as a matter of law for the same reasons the UTPA claim fails.

The Brodowys counter that they have pled common law bad faith as an alternative theory of liability. They argue that if, as the Court has concluded, their bad faith claims are not actionable under the UTPA, they have viable bad faith claims under Montana common law. The Court finds this argument unpersuasive. The common law bad faith claims alleged in the Complaint are substantively identical to the UTPA claims, which are based on the same facts and legal theories, and the Brodowys have not identified any independent common law duty that might apply to Progressive on the facts and theories alleged.

An insurer's *Ridley* obligations arise directly from § 33-18-201(6) and (13) of the UTPA. *Ridley*, 951 P.2d at 992. Likewise, an insurer's obligation to issue payments to a third party claimant without conditioning those payments on a release of the insured is based on § 33-18-201(6) the UTPA. *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 219 (Mont. 2008); *Shilhanek*, 70 P.3d at 725-26. Because the Brodowys do not identify a separate common law duty, and their common law bad faith claims are duplicative of their UTPA claims, those common law claims fail as a matter of law.

To the extent the Brodowys argue that the UTPA does not apply at all if the Court concludes they did not make a "claim" for *Ridley* damages, the Court is not

persuaded. As stated above, it is undisputed that James made a bodily injury claim under the Policy as required for the UTPA to apply. To trigger Progressive's *Ridley* obligations with respect to that bodily injury claim, the Brodowys would have had to demand that Progressive pay James's medical expenses as they were incurred. As explained above, the undisputed evidence demonstrates they did not make such a demand.

The two cases the Brodowys rely on to support their position that they have viable common law bad faith claims are distinguishable. (Doc. 36 at 26, citing *Thomas v. Northwestern Nat. Ins. Co.*, 973 P.2d 804 (Mont. 1998); *Stephens v. Safeco Ins. Co. of America*, 852 P.2d 565 (Mont. 1993)). To begin with, unlike the Brodowys, who are third party claimants, the plaintiffs in *Thomas* and *Stephens* were first party insureds. *Thomas*, 973 P.2d at 805; *Stephens*, 852 P.2d at 566. The Brodowys cite *Stephens* for the proposition that "[i]nsurance companies have a duty to act in good faith with their insured, and this duty exists independent of insurance contract and independent of statute; if this duty is breached the cause of action of the insured against the insurer sounds in tort." *Stephens*, 852 P.2d at 567-68. But unlike a first party insured, a "third-party claimant does not have a contractual relationship with an insurer, and therefore fiduciary duties running from the insurer to the insured to not flow to the third-party claimant as well." *Suzor v. Int'l. Paper Co.*, 386 P.3d 584, 589 (Mont. 2016).

The Brodowys rely on *Thomas* for the proposition that "when the Unfair Trade Practices Act does not apply to the cause of action against an insurer, an insured may bring an action under common law." *Thomas*, 973 P.2d 804, 809 (Mont. 1998) (citing *O'Fallon v. Farmers Ins. Exch.*, 859 P.2d 1008 (Mont. 1993)). In *Thomas*, the Montana Supreme Court allowed the plaintiffs to pursue common law tort claims focusing on the insurer's "conduct during the renewal of the policy, not on the improper handling of the claim or on dilatory claims processing." *Thomas*, 973 P.2d at 809. Unlike *Thomas*, the Brodowys' bad faith claims are based primarily on Progressive's handling of James's bodily injury claim under the Policy. To the extent the Brodowys allege Progressive acted in bad faith before Margaret made an independent claim under the Policy by including her on the optional release and enclosed check, any such common law claim fails as a matter of law for all of the same reasons their UTPA claims do.

## C.    Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 3)

Count 3 of the Complaint asserts a claim for breach of the implied covenant of good faith and fair dealing. (Doc. 10 at ¶¶ 29-33). Again based on the same facts, the Brodowys allege that "[t]o the extent not preempted by the UTPA, a covenant of good faith and fair dealing was implied at all times" in their transactions with Progressive. (Doc. 10 at ¶ 30).

Progressive argues this claim fails as a matter of law because the Brodowys are third-party claimants, and absent a contractual relationship between the parties, there can be no breach of the implied covenant of good faith and fair dealing. Under Montana law, "courts may imply that a covenant exists in all contracts that imposes upon the parties a duty to act honestly and in a commercially reasonable manner." *Hannon v. Avis Rent A Car System, Inc.*, 107 F.Supp.2d 1256, 1261 (D. Mont. 2000). In the insurance context, the UTPA "preserves an insured's common-law right to bring a breach of contract claim," and an insured may recover damages for the breach of the implied covenant of good faith and fair dealing in a breach of contract action. *Draggin' Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 943 (Mont. 2019).

But "[i]n order to recover on the theory of the implied covenant of good faith and fair dealing, there must be an enforceable contract to which the covenant attaches." *Cate v. First Bank (N.A.) Billings,* 865 P.2d 277, 279 (Mont. 1993). "By definition, the implied covenant applies only in relation to the express terms of an underlying, independently enforceable contract." *House v. U.S. Bank Natl. Assn.*, 481 P.3d 820, 831 (Mont. 2021). If there is no contract, express or implied, between the parties, "there c[an] be no breach of the covenant of good faith and fair dealing." *Cate*, 865 P.2d at 280.

As third-party claimants, the Brodowys do not have a contractual relationship with Progressive, which means there is no contract to which an implied covenant of good faith and fair dealing could attach. The Brodowys nevertheless argue the absence of a contract is not fatal to their claim because they qualify as third-party beneficiaries of the contract between Progressive and its insured.

The Brodowys rely on *Harman v. MIA Servs. Contracts*, 858 P.2d 19, 22-23 (Mont. 1993), which the Montana Supreme Court has cited for the rule that "if a third-party can show a promise in a contract creates a duty in the promisor to an intended beneficiary to perform the promise, then the intended beneficiary may enforce the duty." *ALPS Property & Casualty Ins. Co. v. McLean & McLean, PLLP*, 425 P.3d 651, 662 (Mont. 2018) (citing *Harman*, 858 P.2d at 22-23). While this may be true as a general principle, the Brodowys do not provide any persuasive authority from Montana or elsewhere to support their argument that they qualify as intended third-party beneficiaries of the insurance contract between Progressive and its insured.

The one out-of-jurisdiction case the Brodowys rely on for the proposition that a third-party claimant may assert a breach of the implied covenant of good faith and fair dealing against a liability insurer is distinguishable, and in fact supports Progressive's position. *Hand v. Farmers Ins. Exch.*, 29 Cal. Rptr.2d 258

(Cal. App. 2d Dist. 1994). In *Hand*, the court recognized that as a general rule, a third-party claimant is not entitled to pursue a claim for breach of the implied covenant of good faith and fair dealing against a liability insurer. *Hand*, 29 Cal. Rptr. at 263-68. The court identified an exception to general rule for judgment creditors, however, explaining that "once having secured a final judgment for damages [against the insured], the plaintiff becomes a third-party beneficiary of the policy, entitled to recover on the judgment on the policy." *Hand*, 29 Cal. Rptr. at 266. "At that point the insurer's duty to pay runs contractually to the plaintiff," with "the plaintiff having also become a beneficiary of the covenant of good faith." *Hand*, 29 Cal. Rptr. at 266. This exception does not apply here, however, because unlike the plaintiff in *Hand*, the Brodowys did not obtain a judgment against Progressive's insured.

Because the Brodowys are third-party claimants and are strangers to the contract between Progressive and its insured, their claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law.

### D.     Punitive Damages (Count 4)

The Brodowys' Complaint also includes a claim for punitive damages. (Doc. 10 at 4). Under Montana law, compensatory damages are a prerequisite to punitive damages. Mont. Code Ann. § 27-1-220(1) (punitive damages may only be awarded "in addition to compensatory damages"); *Stipe v. First Interstate Bank-Polson*, 188

P.3d 1063, 1068 (Mont. 2008) ("Actual damages are a predicate for punitive damages."). Because the Brodowys' claims for compensatory damages all fail as a matter of law for the reasons discussed above, they cannot maintain a claim for punitive damages.

## IV.  Conclusion

For the reasons discussed above,

IT IS ORDERED that the Brodowys' motion for partial summary judgment on liability (Doc. 27) is DENIED, and Progressive's cross-motion for summary judgment on all claims alleged in the Complaint (Doc. 31) is GRANTED.

DATED this 1st day of September, 2023.

Kathleen L. DeSoto
United States Magistrate Judge